Good morning, Your Honors. Good morning. My name is Rory Cosgrove, and I'm from the Carney-Badley Spelman firm here in Seattle. I represent Appellant Zelda Trahan as our pro bono counsel. This case turns on the interpretation of the Emergency Medical Treatment in Active Labor Act. The principle and dispositive issue relevant to the district court's sua sponte dismissal of my client's federal claims is this. Does the EMTALA's text expressly or impliedly show Congress's intent to allow EMTALA violations to be enforced through Section 1983? This is an issue of first impression. I'd like to first begin with some fundamental principles here. To enforce a federal statute under Section 1983, there must be a federal right. Federal rights are presumptively enforceable through Section 1983. Here, it's undisputed that the EMTALA provides a private express right of action at benefiting my client. So why do we need 1983? Most 1983 cases come up because it's not clear from the underlying statute that an injured plaintiff can sue. Here the statute makes that the remedy, the injured plaintiff can sue, and sets a statute of limitations in connection with that remedy. Why would we think Congress intended to say, but we don't mean what we say here in this limitations period. We're going to let you sue over here that has a different limitations period. I think your Honor raises a good question. And I'd first like to point out that I think the analysis begins first with the text itself. And I'd like to point the Court to Section F under the statute, and this is a preemption provision. And under Section F, it says that state and local law will not be preempted by the EMTALA unless directly in conflict with the statute. So the Congress contemplated that other sources of law would be complementary to or supplementary to the EMTALA. So I think that provision provides expressed textual evidence that Congress was contemplating other sources of law. So you could have a private right of action established under Washington state law, and this wouldn't speak to that at all. That I can understand. But why should we take that to mean that Congress is intending to import not or say we're not interfering with state law with regard to a private right of action, but intentionally disregard what it said with regard to the limitations period for the federal cause of action? So to answer your Honor's question, I think where the Court is driving at is Rancho's Palace Verde's recent decision by the U.S. Supreme Court. In that case, the late, great Justice Scalia said that ordinarily, if a federal statute provides for an express right of action, that indicates that that right of action will be the exclusive right and that will be enforced through the federal statute. But Justice Scalia also said that that raises an ordinary inference. That inference may be overcome by textual evidence or contextual evidence through the statutory scheme, through the legislative history, and through the purpose of the statute. So I think here, with the preemption provision, where the Congress was contemplating other sources of law, that would be the expressed textual support. Now, with the contextual support, where I would first point to is that the EMTALA does not evidence a comprehensive enforcement scheme. And this is driving at the cases from the Supreme Court, Rancho's Palace Verde's and Middlesex. And in those cases, those cases dealt with statutory schemes that were sufficiently comprehensive, carefully tailored, and provided significantly different provisions than the EMTALA here. And I think those are the guiding principles here when we're talking about, does Congress intend to display Section 1983? Because otherwise, the federal right is ordinarily enforceable. And a case I submitted as part of a FRAPS 28J letter earlier this week was a case out of the Supreme Court of Alaska. And in that case, it dealt with a situation here where you had a federal statute, in this case, the Indian Child Welfare Act, that provided for states to borrow from their state statute of limitations. And in that case, the federal statute allowed for a one-year statute of limitation under the federal statute. In that case, under Alaska state law, the 1983 actions have a two-year statute of limitation. So you're dealing with a similar situation here. And in that case, the court said that that was not dispositive. The mere fact that a private right of action under a statute provided for an express statute of limitations was not dispositive. It was merely a factor in ascertaining Congress's intent. And in that case, the court said because the statute wasn't sufficiently comprehensive, that it would allow the cause of action under the Indian Child Welfare Act to proceed via Section 1983. So to get back to your Honor's question, it's not dispositive that Congress provided for a two-year statute of limitation to bring the claim given this case from the Supreme Court of Alaska. I apologize. I've got a letter from the 28J letter from earlier this month. You said there's one submitted this week? Yeah. I submitted a second letter earlier this week, I think on Tuesday. The case is Native Village. I'd be more than happy to provide another copy, but I submitted it earlier this week. I'm sure it's here. I just lose track of things sometimes during calendar weeks. Counsel, even assuming that your client can plead the 1983 cause of action, are there any claims that she successfully pled on the complaint that was filed in this case? Other claims other than the Mtala violation? Well, the Mtala violation has to have a participating hospital, right? So among all the named defendants, wouldn't Harborview be the only potential defendant? No, Your Honor. And the reason it's not the only defendant potentially liable for Mtala violations is we've argued that King County Medic One, as a county-run ambulance company, should be considered a participating hospital under statute, given the legislative history, given the purpose of the statute, and even with the express language of the statute, given how participating hospital is defined by the statute. So here we would argue that not only is Harborview a defendant here in this case, but also that Medic One, as a county-owned hospital, is also a, quote, participating hospital under the statute. A transport company. You're correct. You're correct, Your Honor. I don't see how by any stretch of the imagination that could be extended to be viewed as a hospital. But with regard to Harborview, are there any allegations of negligence or treatment of this particular patient that's different than similarly situated patients? Any allegations of that nature in the complaint? In terms of a claim against Harborview? Yes. Certainly. And I can provide the ER references on rebuttal, but the allegations raised by my client are that, one, when she arrived at Harborview Medical Center, that the hospital did not provide screening procedures that would be normally applied to similarly situated persons. Now, the EMTALA does not provide a uniform federal standard for this. It left that decision to the hospitals themselves. And this relates to the hospital's own operating procedures for when a patient comes to the emergency room, what would be the screening procedures given for all individuals? And so here she did raise allegations that her daughter did not receive the correct screening procedures that, say, another person would receive under the same or similar circumstances. So our argument is that, assuming this Court agrees with our position, that the EMTALA does not evidence a comprehensive enforcement scheme sufficient to preclude Section 1983 relief, that there is a live cause of action against Harborview Medical Center for violating the screening requirements and potentially the stabilizing requirements of the EMTALA. Because let's keep in mind, the EMTALA effectively requires hospitals, participating hospitals, to provide two obligations, a screening obligation and a stabilization obligation. The screening obligation relates to if a person comes to the hospital and a request is made for emergency medical services, that the hospital will provide the same screening to determine if there is an emergency medical condition, as it would for everybody, irrespective of means of income or insurance status. In addition, the EMTALA also requires hospitals to provide a stabilization. So once an emergency medical condition is established, that the statute requires hospitals to stabilize that treatment. And that's within the hospital's means. Now certainly, hospitals in rural settings may have different obligations, or at least they may have different means to stabilize patients' medical care. But here, we're talking about Harborview Medical Center. As the county has pointed out, it is the trauma center here in the state of Washington. And we are alleging that Harborview did not comply with the EMTALA's requirements. All right. Did you want to save the rest of your time? I would, please. Thank you. May it please the Court, David Hackett, Senior Deputy Prosecutor, representing King County and its Medic One unit before the Court today. Although there is a very tragic event underlying this case, ultimately the District Court's decision to screen out this case was appropriate because it was filed beyond the two-year statute of limitations that Congress expressly adopted for the EMTALA. And also for the reason that King County, which operates a first responder ambulance service, is not a participating hospital under the terms of EMTALA. So either the statute of limitations or the failure to state a claim, both reasons justify affirming dismissal of King County. What about Harborview? It is a participating hospital, right? I don't represent Harborview. I would say it is a King County property. I got confused about this. It may be operated by the medical school, but all the indications that I saw were that, in fact, it's owned by King County. I do believe it is correct that King County owns the land and it owns the buildings, but as plaintiffs acknowledge in her reply brief, the University of Washington is a state agency and Harborview is an entity of UW Medicine. And that's the case, and that's why plaintiff, in her complaint, alleged that it was Harborview of Washington and why plaintiff alleged properly that she filed a claim with the state of Washington. You only do that if you have a state of Washington plaintiff. So I think when you look at the allegations of the complaint, which are before this court, it establishes correctly that Harborview is an entity owned and operated, the hospital operations are owned and operated by the University of Washington as a state agency represented by the Attorney General, who, of course, is not in this room. But looking at that statute of limitations, which would bar the action as to all defendants, not only King County, the EMTALA clearly establishes a federal right of action, both on the administrative level, hospitals can be taken to task by the Department of Health for not following EMTALA, and then also it establishes an explicit private right of action. Importantly, it uses the spending clause to establish this private right of action. In coming up with this private right of action, Congress, in accord with its spending law practices and in accord with how it usually treats these types of contentious new federal rights, made that determination as to what to give here and what to not allow here and essentially did the type of trading that results in Congress in a private right of action. The Stilwell case from this court, 2016, I think summarizes very accurately the analysis for the court to follow. And they point out that when a statutory cause of action uses a congressionally mandated statute of limitations, that controls and a private right of action is not available under 1983. But aren't we looking at the overall comprehensive enforcement scheme to get the best indication of congressional intent in this particular circumstance? Yes, and I think you consider the Department of Health ability to proceed administratively as part of that overall scheme as well as the private right of action. But in Stilwell, they recognize that when a statute creating a right also creates a mechanism for enforcement of that right that is more limited than Section 1983, we assume Congress intended those limits to apply to that right. In Palos Verde, the justices pointed out that the existence of a more restrictive private remedy for statutory violations has traditionally been the dividing line between the cases where you can only follow or where you're only allowed the private right of action established by Congress versus the additional action established under 1983. And the Court points out in its majority that there is no case where 1983 has been allowed where Congress has explicitly established that private right of action. So as previously pointed out in questioning today, in those situations where the Court is looking at the overall language of the statute to determine both a federal right and whether you can proceed under that federal right, those are often allowed to proceed under 1983. But when Congress explicitly establishes that private right of action, then the statute of limitations and other limits that Congress has established apply. Because that's the case, this case is barred. It was filed in year three, well after the two-year statute was up. But it is also the case that there is no proper claim stated under the Entala against King County Medic I. First off, in the opening brief, it was not raised that the District Court committed any error on this. We, of course, tried to anticipate arguments, and to the extent that we have done those, we'd ask the Court to accept that. The primary issue is that Entala actions are only available against participating hospitals with emergency rooms. Medic I is not a hospital. Medic I is not an emergency room. It is a first responder unit that tries to help people at the location and then transport them to an appropriate hospital. Indeed, even if Medic I qualified as a hospital, it fully treated and screened Ms. Goldsmith at the scene, and thus there would be no colorable violation of Entala in that situation. But importantly, there's no allegation that it's a participating hospital, i.e. that it accepts Medicare funds. There's no allegation in the complaint that it's a hospital at all. So in this situation where we're essentially looking at a case under 12B, you have to look, as the Court knows, at the allegations and the plausible facts that surround those allegations, and there is nothing plausible that would establish Medic I as a hospital. But also, if you look at the comes to a hospital with an emergency department requirement, under 2010 regulations for the Department of Health and Human Services, that does not happen until the patient arrives on the grounds of the hospital. That changed the prior rule for the Department of Health that was relied upon by this Court in an earlier case, and that means that Purpose Goldsmith did not come to the hospital, Harborview, until she arrived on the grounds of that hospital. So there's no indication that EMTALA is designed to be a situation or a private right of action under federal law that allows a party to essentially say, well, you should have brought me here, or you should have airlifted me. Those types of things are more along the lines of a traditional negligence type of action. You should have treated me differently than you did, not you treated me differently than you would have treated somebody else who had money. And indeed, if you look at the complaint with the allegations with regard to Harborview, it claims that there was no cardiologist called in for Purpose Goldsmith, but it does not claim that Purpose Goldsmith did not get a cardiologist because she was potentially an indigent person at that point or did not have insurance. And that's the key allegation that you need in an EMTALA action. Let me ask you this, Counselor. Assuming that EMTALA violations can be enforced through a Section 1983 claim, is there any indication in the record that amendment against, to allege a claim against Harborview would be futile? Yes, an amendment. It wasn't dismissal on the first complaint, right? Yes, an amendment would be futile against Harborview because if you are filing under 1983 based on EMTALA, we would still not meet the statutory requirements for an EMTALA action, i.e., the participating hospital coming to a hospital, all of those types of things. And there's no facts in the complaint that suggest any other constitutional violations such as due process or equal protection or something like that. So I think if you look at the plausible facts on the complaint, there is nothing consistent with that complaint that would merit an amendment. And indeed, under Section 1915 of 28 U.S.C., it's appropriate for a trial court to dismiss where the defense is complete and obvious from the face of the pleadings. That was the Franklin case in 1984 from this court. This is a case where the defense was complete and obvious from the face of the pleadings both because of the statute of limitations and because of the participating hospital question. Can I take you back a moment? I'm still back in the back of my mind on the enforcement scheme, and I'm wondering if you can reconcile for me the Fitzgerald-Barnstable case with, which was a Title IX case with Clamour, Smith, and City of Rancho Palos Verdes. Fitzgerald talked about the hospital administrative procedures and funding not being sufficiently detailed or the necessary type of structure for administrative or other process. So why isn't this more like a Title IX than it is the others the Supreme Court's ruled on in the past? I think because of that Palos Verdes rule, that the dividing line is when Congress has explicitly recognized a private right of action, and that would also be consistent with the Stilwell decision. Unless the court has any further questions, I would ask that the court affirm dismissal  Thank you, counsel. Just a couple points I'd want to make. I think the closest decision from this circuit where you have a situation where a federal statutory right is found to be an express private right of action in the statute where that was able to be enforced under Section 1983 is the Henry v. Wilden case. And in that case, the court rejected an argument that because the statute, and this is the Child Welfare Act,  that was later enforceable through Section 1983, that that was conclusive proof that another provision of this Child Welfare Act was precluded. And the court rejected that argument. So it's not dispositive that the EMTALA has a private right of action. It's merely a factor in ascertaining Congress's intent. How do you deal with Rancho Palos Verdes, which was a Ninth Circuit decision adopting the view you just articulated that was reversed by the Supreme Court, which said you start with whether there's an express right of action created. And if there is, ordinarily, you don't say that there's also one in 1983. And Rancho Palos Verdes emphasized that the express right of action was more limited, as I think it could be said here, where you have an express right of action more limited in terms of a shorter limitations period. Why isn't Rancho Palos Verdes exactly this case? The reason Rancho Palos Verdes is not this case is if we compare and contrast, first of all, if we compare and contrast the remedies and enforcement scheme in the EMTALA with Section 1983, the conclusion is mandated that this case is different, first of all. Both statutes allow money damages. Both statutes allow injunctive relief. In some respects, the EMTALA is broader than Section 1983, because really I agree with opposing counsel that the dividing line has been when a statutory scheme provides more restrictive remedies than Section 1983, that evidences Congress's intent to preclude enforcement through Section 1983. But here, for example, under the EMTALA, one can sue participating hospitals. Well, participating hospitals includes both private actors and public actors. So in one respect, it's broader than Section 1983, because Section 1983 is limited to. So that doesn't tell me why Congress intends to open the door to a 1983 action, which might happen to have a longer limitations period. I mean, if there's an express limitations period in EMTALA, and there is, what logic is there in Congress saying, but never mind if you can find a 1983 action with a state having a longer limitations period? I just don't understand the logic in thinking Congress intended to open that door. Well, I would urge the Court to review the Supreme Court of Alaska case that I submitted earlier this week. Well, I did just look at the letter. I haven't read the case yet. And the point there made is that both of those are dealing with borrowed limitations periods. And that's not this case, because in this case, EMTALA expressly sets its own limitations period. And so I don't know that the Alaska case really speaks to this situation. Well, we would submit that, notwithstanding the express textual evidence about Congress intending for other sources of law to complement the statute here, given the ‑‑ Just answer this question. Why would Congress set an express limitations period and then open the door to disregard that limitations period if you happen to be in a state where the 1983 period, because it's a borrowed from state law determination, happens to be longer? If Congress wanted to turn to state law, it could have done that directly. Instead, it set a specific two‑year period. Why should we think Congress didn't mean what it said? Well, how I would answer that is we're looking at a totality of the circumstances here. I mean, that's certainly one factor in the Court's analysis to analyze what Congress intended. Now, you look at ‑‑ you compare the remedies under each statute. You compare the statute of limitations. And you also compare the enforcement scheme as a whole. And we would submit that this case is nothing like Rancho's Palos Verdes and sea clamors, given the comprehensive enforcement scheme sufficiently tailored. And I think I've overset my time here, but I thank this Court for its time and attention. All right. Thank you very much, Counsel. And we appreciate you taking this case pro bono as well. Thank you both sides for your argument. The matter is submitted.
judges: Clifton, Nguyen, Battaglia